IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MISSOURIANS FOR FISCAL ACCOUNTABILITY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 14-4287-CV-C-ODS<br>) |
| JAMES KLAHR, in his official capacity as Executive Director of the Missouri Ethics Commission, | )<br>)<br>)<br>) |
| Defendant. | ) |

## ORDER AND OPINION DISMISSING CASE WITHOUT PREJUDICE

On the strength of the Eighth Circuit's decision in National Right to Life Political Action Committee v. Connor, 323 F.3d 684 (8th Cir. 2003), the Court concludes Plaintiff's claims are not ripe for adjudication. The case is dismissed without prejudice.

## I. BACKGROUND

Plaintiff is a "political organization" within the meaning of section 527 of the Internal Revenue Code. It was formed on October 22, 2014, with the intent of collecting contributions and expending money to advocate for Proposition 10, a proposed amendment to the Missouri Constitution that was to be voted upon during the November 4, 2014 general election. To that end, on October 29, 2014, Plaintiff endeavored to register as a "campaign committee" as required by Missouri statutes. However, Plaintiff was concerned that provisions of Missouri law precluded Plaintiff from collecting or expending funds in connection with its support of Proposition 10, and on October 30 it filed this suit seeking a temporary restraining order ("TRO"), preliminary and permanent injunctions, and a declaration, all establishing that such a prohibition violates the First Amendment and enjoining Defendant – the Director of the Missouri Ethics Commission

("MEC"), who was sued only in his official capacity – from enforcing what Plaintiff has described as a thirty-day blackout period. On October 31, Plaintiff filed a separate Motion for Temporary Restraining Order; a hearing was held later that day, and on November 2 the Court issued a TRO that enjoined Defendant "from enforcing the thirty-day blackout period imposed by Section 130.011 of the Missouri Revised Statutes," which permitted Plaintiff to "take actions that violate the blackout period" and precluded Defendant from investigating or sanctioning Plaintiff for taking those actions. The TRO expired by its terms after the election.

Two days after the election, the Court directed the parties to show cause why the case should not be dismissed for lack of jurisdiction because the dispute was rendered moot by the election's occurrence. The parties agreed that Missouri law required Plaintiff to register at least thirty days in advance of any future elections it desired to participate in, so – based on Connor's discussion of mootness – the Court concluded the dispute was not moot. In a footnote, the Court observed that "Connor held the dispute over a similar provision involving different types of campaign committees was not moot after the election in question occurred, but that the dispute was not ripe. The circumstances . . . appear to differentiate this case from Connor." However, the parties had not addressed – and the Court had not purported to apply – Connor's holding regarding ripeness.

On January 8, 2015, the Court directed the parties to file Briefs addressing whether a final judgment should be entered based on the rationale expressed in the TRO. Among the arguments presented by Defendant is a contention that the case must be dismissed because the dispute is not ripe for adjudication.

## II. DISCUSSION

Section 130.011(8) of the Revised Missouri Statutes defines a "campaign committee" in terms that include limitations on what a campaign committee is and can do. In pertinent part, the statute provides that a campaign committee must "be formed no later than thirty days prior to the election for which the committee receives contributions or makes expenditures . . . ." Arguably, then, a campaign committee

2

cannot collect or expend money for any election that occurs within thirty days of its formation.[1] And, while Plaintiff "exists" in the sense that it is a "political organization" under Section 527 of the Internal Revenue Code, the parties agree that the designation as a "campaign committee" under state law is election-specific, and a political organization such as Plaintiff must "re-register" should it wish to collect or expend funds in connection with a future election. E.g., Doc. # 19 at ("Defendant Klahr agrees [that i]f MFA chooses to accept contributions or make expenditures in support of or in opposition to another ballot initiative during a future election, §130.011 requires that MFA re-register as a campaign committee at least 30 days before the election.").

### A. Mootness

The Court suggested that this case had become moot (stale) because the election of November 2014 passed, reasoning that Plaintiff could no longer advocate for passage of Proposition 10, and the mootness exception for disputes capable of repetition yet evading review did not apply because the November 2014 election could not occur again. In response, Plaintiff argued that it might accept contributions and make contributions in future elections, which would (as discussed above) necessitate re-registering as a campaign committee. While it may appear that any conflict with the thirty-day requirement could be avoided if Plaintiff simply registered at least thirty days before it engaged in this activity – and thus diminish the likelihood of the dispute recurring – Plaintiff cited Connor for the contrary proposition.

Connor involved a challenge to Section 130.011(10) of the Revised Missouri Statutes – a provision that applies to a different type of committee but that similarly requires registration within a specified period before the election for which the committee raises or expends contributions. In that case, the plaintiffs desired to involve itself in the 2000 election for Governor of Missouri, but not until approximately three weeks before the election. As explained by the Court of Appeals:

---

[1] Defendant characterizes the statute differently, but there is no reason to delve into this issue as the case is being dismissed on ripeness grounds.

3

> Prior to October 16, 2000, when then-Missouri Governor and United States Senate candidate Mel Carnahan was killed in an airplane crash, neither NRLC or NRLPAC intended to make expenditures with respect to any Missouri race in the November 7, 2000, election. Rather, NRLPAC had been vigorously advocating Carnahan's defeat in his race against then-incumbent Senator John Ashcroft. As a result of Carnahan's death, NRLPAC decided to shift its focus and efforts toward the Missouri gubernatorial race between Jim Talent and Bob Holden. NRLPAC immediately printed new political communications expressly advocating Jim Talent's election in that race. It planned to distribute these communications beginning October 17, 2000, twenty-one days before the election.

Connor, 323 F.3d at 687.

One of the claims in Connor is virtually identical to the claim asserted in this case: it alleged "that Missouri Revised Statute section 130.011(10) is an unconstitutional prior restraint on political speech because it requires a 'continuing committee' to be formed and registered at least thirty days before an election in order to make expenditures." Id. at 690. After the November 2000 election occurred, the district court dismissed this claim for the alternative reasons that it was (1) moot and (2) no longer ripe. The Eighth Circuit disagreed with the mootness analysis: it agreed that the dispute was moot, but held that the exception for disputes capable of repetition yet evading review should apply. With respect to whether the dispute was capable of repetition, the court stated that it "believe[d] that any number of events . . . might cause [a committee] to become involved in a state race within thirty days of an election. For instance, polls might reveal a closer race than expected and attract [a committee's] resources. New information or effective advertising could drastically alter public opinion in the weeks before an election. Trends in other races could elevate the importance of races with less clear outcomes." Id. at 692. The Court of Appeals also concluded the dispute could evade review. Id. As mentioned earlier, the Court relied on the near identity between this case and Connor to hold that Plaintiff's claim is not moot.

## B. Ripeness

Curiously – despite (1) citing Connor originally in response to the Court's query about mootness, (2) observing the stark similarity between the cases, see Doc. # 13 at

4

3, and (3) Defendant's reliance on Connor's discussion of the ripeness issue – Plaintiff failed to cite Connor (much less discuss or distinguish it) in the face of Defendant's presentation of the ripeness issue. See Doc. # 23. The similarities between the cases makes Connor impossible to ignore, and Plaintiff's failure to address or distinguish it leaves the Court little basis for reaching a different result.

Connor explained that the "rationale of the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies form judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." 323 F.3d at 692 (quotations omitted). When evaluating whether a dispute is ripe for judicial consideration, courts must consider "(1) the hardship to the plaintiff caused by delayed review; (2) the extent to which judicial intervention would interfere with administrative action; and (3) whether the court would benefit from further factual development." Id. at 692-93.

In determining whether the challenge to section 130.011(10) was ripe for consideration, the Eighth Circuit started by observing the plaintiffs had "not alleged with any degree of specificity the constitutional threat they would face for failing to register before the thirty-day cutoff" because the statute "does not, on its face limit . . . advocacy within thirty days of an election; it merely states a registration deadline." Id. at 693. In this regard the Court of Appeals noted an affidavit from the MEC's then-President confirming that the MEC permitted committees to register after the thirtieth day before an election, had not taken action to prevent such a committee from receiving or expending funds, and that the MEC "entered agreements with treasurers of those committees for the payment of fees pursuant to the [MEC's] authority under § 105.961.4(6), Mo.Rev.Stat." Id. The court also noted that the plaintiffs had not "presented evidence on the issue of fees, nor ha[d] they sought clarification under section 105.955.16, the Missouri statute authorizing the MEC to issue advisory opinions." Id. The court agreed with the district court that how the MEC would handle a fee for a committee seeking to register within thirty days of an election was important, and "these issues would benefit substantially from further development." Id. The court concluded by agreeing that delayed review would not work any hardship on the plaintiffs

5

as their desire to participate in future elections provided "an incentive to seek an MEC opinion and gather evidence regarding the enforcement of section 130.011(10). They may, in fact, discover that no real threat of enforcement exists at all," and a claim is not ripe for adjudication if it depends on contingent facts that may not occur. Id.

The exact same factors that persuaded the Eighth Circuit to hold the challenge in in Connor was not ripe are present in this case.

- The court described section 130.011(10) as a registration deadline and not a restriction on advocacy. The statute Plaintiff challenges – section 130.011(8) – is a virtually identical provision that applies to a different kind of committee. Plaintiff consistently refrains from characterizing it as a registration deadline, but Plaintiff has not acknowledged Connor and thus has not presented a basis upon which the Court can (or is empowered to) reach a different conclusion.
- As in Connor, Defendant's Verified Answer confirms that the MEC still "accepts Statements of Committee Organization filed by campaign committees after the thirtieth day before an election," that it "recognizes the existence and registration" of such committees," and that it "does not take any action to prevent a campaign committee from making or receiving contributions or expenditures . . . just because that committee failed to file its statement of organization by the thirtieth day prior to that election." Verified Answer, ¶¶ 39-40. When a late registration is submitted, the MEC – as described in Connor – still "negotiate[s] with the treasurer of such committee for the payment of a fee in an amount not greater than one thousand dollars under § 105.961.4(6)." Id. ¶ 43.
- Plaintiff, like the plaintiffs in Connor, has not sought an advisory opinion from the MEC.
- Plaintiff has not presented evidence of enforcement actions by Defendant (or the MEC) dealing with the imposition of a fee for late registration. So like the plaintiffs in Connor, Plaintiff has not demonstrated a threat of enforcement. Plaintiff also has not demonstrated what the fee is for a committee that seeks to register late.

6

Given these similarities between Connor and the case at bar, the Court would understandably look for an argument explaining why the outcome in Connor does not dictate the outcome in the case at bar. As noted, however, Plaintiff has not addressed Connor's ripeness analysis. Instead:

- Plaintiff contends the issue was previously addressed and ruled upon. To the contrary: This Court clearly addressed the issue of mootness and made a preliminary observation about ripeness. Moreover, Connor establishes that mootness and ripeness are different (albeit related), and the outcome on one does not dictate the outcome on the other. Finally, the Court has a continuing obligation to insure that it has jurisdiction over a case.
- Plaintiff argues its claim is capable of repetition yet evading review. However, this was also true in Connor. There, the fact that the claim could be repeated yet evade review triggered the exception to mootness, but did not prevent the claim from being dismissed as unripe. Plaintiff does not explain why the argument should matter here when it did not matter in Connor, and in truth the mootness exception does not serve to overcome the lack of ripeness. It may be plausible that, at some unspecified point in the future, Plaintiff will find itself in a situation in which it wants to involve itself in an election within thirty days of the vote – but this does not mean that adjudication of such an abstract eventuality is not premature.
- Plaintiff argues that it should not have to seek an advisory opinion because the law is clear. However, it is just as clear as the law was in Connor. In this regard, Plaintiff concedes the MEC accepts late registrations and assesses a late filing fee – which is exactly the situation present in Connor. Nonetheless, Connor mentioned the plaintiffs' ability to seek an advisory opinion as a factor in the ripeness analysis.

In the context of a different argument, Plaintiff has presented settlements between MEC and other committees. To the extent Plaintiff intended (despite failing to specifically so indicate) that these settlements constitute the missing "evidence regarding the enforcement" of the registration requirements, the effort falls short. The

7

first (contained in Exhibit B to Plaintiff's March 11, 2015 filing) involved a settlement over a committee's violation of numerous provisions of Missouri law, including failure to: register more than thirty days before the election, register within twenty days of formation, timely file campaign finance disclosure reports, and include certain disclosures on campaign advertising.  The MEC and the committee reached an agreement on payment of a $3,100 fee, but if the committee paid $400 within forty-five days of the agreement the balance of the fee would be stayed.   The second settlement involved a committee that failed to register more than thirty days before the election and also failed to register within twenty days of its formation; the committee and the MEC agreed to payment of a $1,000 fee, but if the committee paid $100 within forty-five days the balance was to be stayed.  These proceedings do not resolve the contingency of future facts for at least three reasons: (1) presumably, this sort of information was equally available to the court in Connor, yet the claim was still not deemed ripe, (2) the situations are different in that the two committees violated other (and in the case of the first, several other) provisions of Missouri law, so the settlements reveal little about this specific provision, and (3) it appears that both of these committees' violations were discovered after the fact; there is still no indication as to how the MEC responds when a committee approaches after the deadline but *before* it raises or spends funds and attempts to register.

Ultimately, this case looks exactly like Connor.  And Plaintiff has not disputed (or even addressed) this point, nor has it explained why the outcome in this case should not mirror the outcome in Connor.  For these reasons, the Court relies on Connor to hold that this case is not ripe for adjudication.

### III.  CONCLUSION

The case is dismissed without prejudice.  The Court expresses no opinion on Defendant's remaining arguments.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: April 27, 2015          UNITED STATES DISTRICT COURT