IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MISSOURIANS FOR FISCAL ACCOUNTABILITY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 14-4287-CV-ODS ) |
| JAMES KLAHR, in his official capacity as Executive Director of the Missouri Ethics Commission, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER AND OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending are Defendant Missouri Ethics Commission's ("Commission") Motion for Summary Judgment (Doc. #35) and Plaintiff Missourians for Fiscal Accountability's ("MFA") Motion for Summary Judgment (Doc. #37). For the following reasons, the Commission's motion is denied, and MFA's motion is granted.

## I.  BACKGROUND

MFA is a "political organization" within the meaning of section 527 of the Internal Revenue Code. MFA was formed on October 22, 2014, with the intent of collecting contributions and expending money to advocate for Proposition 10, a proposed amendment to the Missouri Constitution voted upon during the November 4, 2014 general election. MFA endeavored to register as a "campaign committee" as required by Missouri statute. However, Missouri statutes precluded MFA from collecting or spending money to support Proposition 10 because MFA did not register as a campaign committee at least thirty days before the election.

Section 130.011 of the Missouri Revised Statutes defines a "campaign committee" in terms that include limitations on what a campaign committee is and can do. In pertinent part, the statute provides:

> a committee, other than a candidate committee, which shall be formed by an individual or group of individuals to receive contributions or make expenditures and whose sole purpose is to support or oppose the qualification and passage of one or more particular ballot measures in an election…shall be formed no later than thirty days prior to the election for which the committee receives contributions or makes expenditures….

Mo. Rev. Stat. § 130.011(8) (2016). According to MFA, this section creates a blackout period during which a campaign committee cannot collect or expend funds, and this blackout period places a ceiling on speech for thirty days even if an organization is willing to comply with all disclosure requirements. *See* Doc. #1.

On October 30, 2014, MFA initiated this lawsuit alleging section 130.011(8) restricted its ability to collect and expend funds to support Proposition 10 violates the First Amendment, and sought an injunction to protect itself from the adverse effects of violating section 130.011. *Id.* On October 31, 2014, MFA filed a motion for temporary restraining order. Doc. #5. After conducting a telephonic hearing in which both parties participated, the Court granted MFA's motion. Doc. #9.

After the election was held, the Court directed the parties to show cause why the case should not be dismissed for lack of jurisdiction because the dispute may have been rendered moot by the election's occurrence. Doc. #11. The Court concluded the matter was not moot, but the Court sought additional briefing from the parties regarding whether a final judgment should be entered based upon the rationale expressed in the temporary restraining order. Doc. #20. On April 27, 2015, the Court dismissed the matter without prejudice, finding the claims were not ripe for adjudication. Doc. #25. MFA appealed this Court's decision to the Court of Appeals for the Eighth Circuit. Doc. #17. The Eighth Circuit found MFA's claims were ripe and remanded the case. *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789 (8th Cir. 2016).

Both parties have filed motions for summary judgment asking the Court to determine whether section 130.011(8) violates the First Amendment. These motions are fully briefed and now ripe for consideration.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party

2

is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the…pleadings, but…by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III. DISCUSSION

The First Amendment protects the right to participate in the political process, which includes the right to make political donations or spend money to express political views. *See McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1441 (2014). Speech about ballot initiatives, as is the case here, is "quintessential political speech, which is at the heart of the protections of the First Amendment." *281 Care Committee v. Arneson*, 638 F.3d 621, 635 (8th Cir. 2011) (citing *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). The First Amendment's protections extend to corporations and associations. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 342-43 (2010) (citations omitted). When the Government restricts speech, it bears the burden of proving the constitutionality of the restrictions. *McCutcheon*, 134 S. Ct. at 1452. "Laws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United*, 558 U.S. at 340 (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 464 (2007)).

3

The Commission concedes Chapter 130 of the Missouri Revised Statutes "imposes *some* limits on election-related speech by prohibiting or limiting certain kinds of expenditures" and "violations" of the chapter's provisions expressly prohibit, limit, or compel speech could result in civil or criminal penalties. Doc. #40, at 11-12. The Commission contends the plain language of section 130.011(8), however, does not prohibit speech, does not impose penalties, and does not sideline anyone from speech. *Id.*, at 11-12, 24. Section 130.011(8), according to the Commission is "part of a larger statutory scheme." *Id.*, at 21. The Commission places great importance on having a record of every participating campaign committee so that voters or journalists can access the name and contact information for the committee's treasurer and the names and addresses of donors funding the committee's advertisements. *Id.*, at 22. Without the formation deadline, according to the Commission, voters' access to the information would be limited or possibly unavailable. *Id.*, at 23-24.

The Commission argues section 130.011(8) "does not prohibit MFA from accepting contributions or making expenditures in the 30 days before an election." Doc. #40, at 25. Rather, the Commission maintains the section incentivizes campaign committees to form early and in time to provide voters with access to information. *Id.*, at 26. Failing to meet the registration deadline may only result in an administrative fee. *Id.* The Commission contends "nothing in the statute prevents the committee from accepting contributions and making expenditures from the moment it forms." *Id.*

Contrary to the Commission's argument, any person who violates Chapter 130 may be found guilty of a class A misdemeanor. Mo. Rev. Stat. § 130.081.1 (2016). A class A misdemeanor is punishable by a sentence of imprisonment, not to exceed one year. Mo. Rev. Stat. § 558.011.1(6) (2016).[1] While the Commission is not empowered to prosecute criminal violations, it has the power to conduct investigations and assess fines against campaign committees that violate Missouri's election laws, including section 130.011. Doc. #40, at 14.[2] The Commission accurately represents that some

---

[1] There is a separate provision pertaining to persons who fail to file any report or statement required by Chapter 130, which is an infraction. Mo. Rev. Stat. § 130.081.2 (2016).
[2] If a violation pertaining to the failure to file a report or statement occurs (or any other violation deemed not a criminal violation), the Commission has the authority to conduct

4

Chapter 130 violations are spelled out.[3] And while section 130.011(8) does not set forth what constitutes a violation, section 130.081.1 is not limited to any particular provision. It encompasses all of Chapter 130. Mo. Rev. Stat. § 130.081.1 (2016). And unless the violation is one related to failing to file a report or statement, a person who violates any other provision of Chapter 130 may be found guilty of a class A misdemeanor. *Id.* Further, MFA may face civil penalties if it violates Chapter 130.

> Any person who knowingly accepts or makes a contribution or makes an expenditure in violation of any provision of this chapter or who knowingly conceals a contribution or expenditure by filing a false or incomplete report or by not filing a required report, in addition to or in the alternative to any other penalty imposed by this chapter, shall be held liable to the state in civil penalties in an amount equal to any such contribution or expenditure.

Mo. Rev. Stat. § 130.072 (2016). Thus, any expenditure by MFA during the thirty-day period could result in civil penalties. *Id.* A penalty need not be criminal to chill speech. *281 Care Committee*, 638 F.3d at 630 (citation omitted) (noting non-criminal consequences can contribute to the "objective reasonableness of alleged chill.").

Consequently, if a group of individuals decides less than thirty days before an election to engage in First Amendment activity related to that election, it faces potential criminal prosecution and/or a civil penalty. Given this, the Court finds section 130.011(8), at best, burdens political speech. To pass constitutional muster, the Commission must prove the restriction on political speech "furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United*, 58 U.S. at 340 (citation omitted). The Commission contends the thirty-day blackout period promotes the State's interest in informing voters of the sources of election-related spending. This interest has been recognized as valid and has most often been posited as justifying

---

a closed hearing and may seek fees for violations in an amount not greater than $1,000. Mo. Rev. Stat. § 105.961 (2016). The Commission may also initiate judicial proceedings. *Id.*, § 105.961.5.

[3] Section 130.023 sets forth different types of criminal violations. Mo. Rev. Stat. § 130.028.3 (2016). It is a violation for a person to fail to provide information related to printed election materials. *Id.*, § 130.031.11. It is also a violation for a committee to offer chances to win prizes or money to persons in an effort to encourage persons to endorse, send or deliver election materials, or contact persons in their homes. *Id.*, § 130.031.12.

5

disclosure requirements. *See Citizens United*, 558 U.S. at 367. Disclosure requirements are justified, in part, based upon the Government's interest in providing voters with information about sources of election-related spending. *McCutcheon*, 134 S. Ct. at 1434 (citing *Citizens United*, 558 U.S. at 367). Disclosure requirements "burden the ability to speak, but they impose no ceiling on campaign-related activities and do not prevent anyone from speaking. The Court has subjected these requirements to exacting scrutiny, which requires a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Citizens United*, 558 U.S. at 366-67.

     The fact a campaign committee exists does not inform voters as to what issue(s) in which the committee is interested or what position the committee intends to take on the issue(s). Significantly, the blackout period *forbids* communication with the voters. In fact, a campaign committee could comply with the statute by registering more than thirty days before the election, and wait until days before the election to begin collecting and spending money. If that were the case, the voters would have just as little information about that committee as they would with regard to MFA. The thirty-day blackout period at issue is not a disclosure requirement. Furthermore, it does not accomplish its objective as a voter education tool. Thus, it does not meet exacting scrutiny.

     The Court would be remiss if it did not also discuss the timeframe in which MFA sought to speak. As the Supreme Court has noted, "[i]t is well known that the public begins to concentrate on elections only in the weeks immediately before they are held. There are short timeframes in which speech can have influence." *Citizens United*, 558 U.S. at 334. It is during the weeks immediately prior to the election that "the need or relevance of speech will often first be apparent." *Id.* One's ability to speak and persuade voters is "stifled if the speaker must first commence a protracted lawsuit." *Id.* The section's prohibition of speech during this critical timeframe in the election process silences speakers and prevents information from reaching voters. The statute is a prior restraint on the speech of late-forming campaign committees.

     If the State wants to educate voters, it can employ more effective means that are less violative of First Amendment rights – that is, disclosure requirements. *Catholic*

6

*Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 428-29 (5th Cir. 2014); *see also Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 298-99 (1981) ("The public interest allegedly advanced by [a contribution limitation] – identifying the sources of support for and opposition to ballot measures – is insubstantial because voters may identify those sources under the provisions [establishing disclosure requirements]."). If Missouri does not have a disclosure requirement, then enforcing the blackout period does nothing to inform the voters. If Missouri has a disclosure requirement, then the blackout period does nothing to further inform the voters.

The Commission places great weight on the Eighth Circuit's decision in *National Right to Life Political Action Committee v. Connor*, 323 F.3d 684 (8th Cir. 2003), to argue it should be granted summary judgment. In *Connor*, the Eighth Circuit held the plaintiffs, a national non-profit organization and its committee, lacked standing to bring certain claims challenging Missouri statutes precluding an out-of-state committee from making expenditures for communications in Missouri elections within thirty days prior to the election, and other claim were not ripe. *Id.* at 690-95. Within the Court's discussion of ripeness, it stated section 130.011(10), a statute pertaining to continuing committees, "does not, on its face, limit issue or express advocacy within thirty days of an election; it merely states a registration deadline." *Id.* at 693.

The Commission concedes the Eighth Circuit did not decide whether that section violated the First Amendment. Doc. #40, at 15. Significantly, the Eighth Circuit did not address the constitutionally of the section, and stated how the Commission would handle the "fee" for failing to file prior to the thirty day window would have a significant impact on its constitutional scrutiny of that statute. *Id.* Accordingly, *Connor* is not beneficial to the Court's analysis as to the constitutionality of section 130.011(8).

## IV.    CONCLUSION

For the foregoing reasons, MFA's motion for summary judgment is granted, and the Commission's motion for summary judgment is denied.

IT IS SO ORDERED.

/s/ <u>Ortrie D. Smith</u>
ORTRIE D. SMITH, SENIOR JUDGE
DATE:  January 5, 2017      UNITED STATES DISTRICT COURT

7